**BEFORE THE UNITED STATS JUDICIAL
PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re: RAH COLOR TECHNOLOGIES LLC PATENT LITIGATION | MDL No. 2874 |

**ELECTRONICS FOR IMAGING, INC.'S RESPONSE IN SUPPORT OF
MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF
CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS**

62921897v2

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................1

II.    RELEVANT FACTS ...........................................................................2

       A.    RAH's Long History of Licensing and Enforcement Activities............................2

       B.    RAH's Current Campaign of Patent Infringement Actions....................................2

III.   LEGAL STANDARD...........................................................................4

IV.    ARGUMENT ......................................................................................5

       A.    The Pending Actions Involve Common Questions of Fact and Law and
             Are Well Suited to Promote the Just and Efficient Conduct of the Actions...........5

       B.    The Northern District of California is Particularly Suited to be the
             Transferee Court .............................................................................8

       C.    No Other District Referenced By RAH Is More Convenient than the
             Northern District of California...........................................................11

V.     CONCLUSION...................................................................................12

# TABLE OF AUTHORITIES

CASES

*EFI v. RAH*,
   Case No. 3:18-cv-01612, Dkt. 21-1 ............................................................... passim

*In re Bear Creek Techs.*,
   858 F. Supp. 2d at 1379 .................................................................................6

*In re Compression Labs, Inc. Patent Litig.*,
   360 F.Supp.2d 1367 (J.P.M.L. 2005).............................................................10

*In re Equifax, Inc.*,
   MDL No. 2800, 2017 WL 6031680 (J.P.M.L. Dec. 6, 2017)..........................8

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability
   Litigation*,
   254 F. Supp. 3d 1381 (J.P.M.L. 2017).............................................................4

*In re FMC Corp. Patent Litig.*,
   422 F. Supp. 1163 (J.P.M.L. 1976)..................................................................7

*In re Liquid Toppings Dispensing Sys. Pat. Litig.*,
   291 F.Supp.3d 1378 (J.P.M.L. 2018)...............................................................5

*In re Nat'l Prescription Opiate Litig.*,
   MDL No. 2804, 2018 U.S. Dist. LEXIS 170489 (J.P.M.L. Oct. 3, 2018) ..............9

*In re PersonalWeb Techs.*,
   LLC, No. MDL No. 2834, 2018 U.S. Dist. LEXIS 101057 (J.P.M.L. June 6,
   2018) ............................................................................................................5, 8

*In re Rembrandt Techs., LP, Patent Litig.*,
   493 F. Supp. 2d 1367 (J.P.M.L. 2007).........................................................4, 5, 6

*In re Roundup Products Liab. Litig.*,
   214 F. Supp. 3d 1346 (J.P.M.L. 2016)...........................................................10

*In re Viagra (Sildenafil Citrate) Products Liab. Litig.*,
   176 F. Supp. 3d 1377 (J.P.M.L. 2016)...........................................................10

*In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.*,
   MDL No. 2797, 2017 WL 4737285 (J.P.M.L. Oct. 19, 2017) .................................8

*RAH v. Adobe*,
   Case No. 3:18-cv-03277 (N.D. Cal.) .............................................................. passim

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page**

*RAH v. Quad*,
   Case No. 2:18-cv-00087 (W.D. Wis.)..............................................................................passim

*RAH v. Seiko Espon Corp., et al.*,
   Case No. 10-cv-06710, Dkt. 1 (N.Y.W.D. Dec. 21, 2010)..........................................................9

*RAH v. Xerox*,
   Case No. 1:17-cv-06813, Dkt. 60 (N.D. Ill. Sept. 24, 2018) ......................................................4

*RAH v. Xerox*,
   Case No. 6:18-cv-06746 ....................................................................................................passim

STATUTES

28 U.S.C. 1404(a) ...........................................................................................................................11

28 U.S.C. § 1407(a) ...........................................................................................................................4

OTHER AUTHORITIES

H.R. No. 90-1130, 1st Sess. (1968) ..................................................................................................4

Electronics for Imaging, Inc. ("EFI") respectfully submits this brief in response to Quad/Graphics, Inc.'s ("Quad") motion to transfer four related federal actions to the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

## I.   INTRODUCTION

Patent Owner RAH Color Technologies LLC ("RAH") has sued Adobe Systems, Inc. ("Adobe") and EFI customers Xerox Corporation ("Xerox"), and Quad/Graphics, Inc. ("Quad") for patent infringement, asserting nine patents pertaining to color management and reproduction. EFI, as the end supplier of certain products accused in the Quad and Xerox cases, sued RAH in the Northern District of California for declaratory relief of noninfringement based on its product line RAH accused of infringing in the customer lawsuits.  RAH's suit against Adobe is currently pending in the Northern District of California, its case against Xerox was recently transferred to the Western District of New York, and its case against Quad was recently transferred to the Eastern District of Wisconsin.  Thus, three district courts currently are poised to address the same or nearly identical infringement claims involving the same plaintiff and patents and likely involving the same or substantially similar claim construction issues as well as the same or substantially similar non-infringement and invalidity defenses.

Coordination or consolidation of these cases for pretrial purposes in the Northern District of California will promote the most judicial efficiency while meeting the goals of Section 1407, including conserving the resources of the parties and their counsel and avoid inconsistent rulings. The pending actions involve common questions of fact and law and are well suited to promote the just and efficient conduct of the actions.  Only one judge would have to learn the technology at issue, construe the claims, examine the prior art, and rule on summary judgment of non-infringement and invalidity.  Moreover, the Northern District of California is the most convenient forum to serve as the transferee court, and EFI, Adobe, Xerox, and Quad have all expressed interest in litigating there.  Even plaintiff RAH has consented to the Northern District of California in at least one license regarding the asserted patents and repeatedly has directed its

1

licensing and enforcement activities to residents of California, including the Northern District of California.

Accordingly, EFI does not oppose Quad's MDL motion to transfer and consolidate the RAH lawsuits in the Northern District of California. Centralization of the actions is appropriate under Section 1407, and the Northern District of California is the best venue to achieve efficiency for the judiciary, the parties, and counsel.

## II.    RELEVANT FACTS

### A.    RAH's Long History of Licensing and Enforcement Activities

RAH was formed in 2005 for the express purpose of licensing and enforcing its founder's patents. *RAH v. Xerox*, Case No. 6:18-cv-06746, Complaint, ¶ 20: "In 2005, RAH Color Technologies LLC was formed as a vehicle for an on-going licensing program for companies whose products depend on Dr. Holub's innovations." Over the last decade, RAH has approached dozens of companies throughout the U.S., including several in California, to license and enforce its patents. Declaration of Richard Holub, *EFI v. RAH*, Case No. 3:18-cv-01612, Dkt. 21-1, ¶ 3. RAH has filed at least 11 patent infringement cases against 17 or more parties who are located throughout the U.S., including California: "RAH Color Technologies has licensed the technology covered by its patents to nine of the largest manufacturers and service providers of color imaging and printing products for consumer and professional segments in the world. RAH Color Technologies has also licensed its innovations to two additional manufacturers with extensive experience in the color measurement and management space. Additionally, 13 major companies have entered into end-user license agreements with RAH Color Technologies." *RAH v. Xerox*, Case No. 6:18-cv-06746, Complaint, ¶ 24.

### B.    RAH's Current Campaign of Patent Infringement Actions

RAH has alleged that it first put Adobe on notice of its patents and its infringement claims on December 19, 2013, Xerox on March 27, 2014, and Quad on February 2, 2016. *RAH v. Adobe*, Case No. 3:18-cv-03277 (N.D. Cal.), Complaint, ¶ 27; *RAH v. Xerox*, Case No. 6:18-cv-06746 (W.D.N.Y.), Complaint, ¶ 27; *RAH v. Quad*, Case No. 2:18-cv-00087 (W.D. Wis.),

2

Complaint, ¶ 27.  RAH did not actually sue Adobe until Jun 4, 2018, Xerox until November 20, 2017, and Quad until June 30, 2017.  EFI filed its declaratory judgment action against RAH, as a result of RAH's lawsuits against its customers, on March 14, 2018.

In all four of these cases, RAH has asserted a subset of the following nine patents: United States Patent Nos. 6,043,909 ("the '909 patent"); 6,995,870 ("the '870 patent"); 7,312,897 ("the '897 patent"); 7,280,251 ("the '251 patent"); 7,729,008 ("the '008 patent"); 7,791,761 ("the '761 patent"); 8,416,444 ("the '444 patent"); 8,537,357 ("the '357 patent"); and 8,760,704 ("the '704 patent") (collectively the "Asserted Patents"). Of these nine patents, seven are part of a single patent family with essentially identical specifications. Only the '357 patent and the '251 patent are from different families. All of the patents name Richard A. Holub as their inventor.  *See* Quad's motion, Case MDL No. 2874 at 2 (summarizing cases) (reproduced below).

| Parties | Filed | Case No. | Venue/ Judge | U.S. 6,043,909 | U.S. 6,995,870 | U.S. 7,312,897 | U.S. 7,280,251 | U.S. 7,729,008 | U.S. 7,791,761 | U.S. 8,416,444 | U.S. 8,537,357 | U.S. 8,760,704 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Patents-in-Suit** | | | | | | | | | |
| RAH Color Technologies LLC v. Xerox Corporation | Nov. 20, 2017 | TBD *Formerly 1:17-cv-06813* | W.D.N.Y./ TBD *Formerly N.D. Ill./ Wood* | X | X | X | X | X | | X | X | X |
| RAH Color Technologies LLC v. Quad/Graphics Inc. | Jan. 17, 2018 | 2:18-cv-00087 | E.D. Wis./ Stadtmueller | | | X | X | X | | | X | X |
| Electronics For Imaging, Inc. v. RAH Color Technologies LLC | Mar. 14, 2018 | 3:18-cv-01612 | N.D. Cal./ Orrick | | | X | X | X | | | | X |
| RAH Color Technologies LLC v. Adobe Systems Inc. | June 4, 2018 | 3:18-cv-03277 | N.D. Cal./ Orrick | | | | X | X | X | X | | |

No substantive rulings have been issued in any of the pending actions, including claim construction orders, summary judgment of non-infringement or invalidity.  The EFI case is in the

pleading stage awaiting a decision from the Court on RAH's motion to dismiss.[1]  *EFI,* Case No. 3:18-cv-01612, Dkt. 38.  The Adobe case does not currently have a trial date, which will be set in the Claim Construction Order following a Claim Construction Hearing set for March 11, 2019. *Adobe*, Case No. 3:18-cv-03277, Dkt. 58.  The Xerox case, originally filed in the Northern District of Illinois, was recently transferred to the Western District of New York on September 24, 2018.  *RAH v. Xerox*, Case No. 1:17-cv-06813, Dkt. 60 (N.D. Ill. Sept. 24, 2018).  Currently, the Xerox case has no formal schedule, nor any trial date.  *See generally RAH v. Xerox*, Case No. 6:18-cv-06746 (W.D.N.Y.).  The Quad case is currently set for trial on January 28, 2019.  *Quad*, Case No. 2:18-cv-00087, Dkt. 86.  However, that date is only a little over 12 months since the case was transferred from the Northern District of Illinois, where it appears that the parties were singularly focused on Quad's motion to dismiss or transfer for the prior six months.

III.   **LEGAL STANDARD**

Section 1407 of Title 28 provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).  Centralization is meant to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary."  *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).  Patent cases are those particularly well-suited for multidistrict litigation.  *See* H.R. No. 90-1130, 1st Sess. (1968) ("The types of cases in which massive filings of multidistrict litigation are reasonably certain to occur include not only civil antitrust actions but also, common disaster (air crash) actions, ***patent*** and trademark suits, . .

---

[1] Whether or not EFI's case is dismissed is beside the point, because the issue raised in Quad's motion to transfer is the appropriateness of consolidating the pending cases.  As explained in EFI's response, and Quad's motion, these pending actions involve common questions of fact and law and are suitable for consolidation regardless of where EFI's action is pending.

. among others.") (emphasis added).  Manufacturer or supplier lawsuits are particularly suited to promote judicial efficiency because of the nature of the relationship between the parties.  *See In re PersonalWeb Techs.*, LLC, No. MDL No. 2834, 2018 U.S. Dist. LEXIS 101057, at *2-3 (J.P.M.L. June 6, 2018) ("Centralization will create significant judicial efficiencies by allowing a single judge to preside over all pretrial proceedings, including *inter alia* requests to stay the customer suits, claim construction hearings. . . .").

## IV.   ARGUMENT

### A.   The Pending Actions Involve Common Questions of Fact and Law and Are Well Suited to Promote the Just and Efficient Conduct of the Actions

"Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."  *See, e.g., In re Rembrandt Techs., LP, Patent Litig.*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007).  Rather, transfer is warranted where there is at least some overlap of issues such that consolidation would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."  *Id.*

Here, the accused products and patents are closely intertwined, if not identical, between the cases and thus involve significant overlap of issues, including (1) each of the cases implicate EFI or Adobe products, (2) the cases involve the same or closely related patents, (3) seven of nine patents are part of a single patent family with essentially identical specifications, (4) discovery could be streamlined, (5) claim construction proceedings could be streamlined, and (6) common non-infringement and invalidity theories are likely.  If the cases were consolidated, only one judge would have to learn the technology at issue, construe the claims, examine the prior art, and rule on summary judgment of non-infringement and invalidity, which will conserve judicial resources and avoid inconsistent rulings.  Courts repeatedly have consolidated related patent cases for these reasons.  *See In re Liquid Toppings Dispensing Sys. Pat. Litig.*, 291 F.Supp.3d 1378, 1379 (J.P.M.L. 2018) ("Centralization will create significant judicial efficiencies by allowing a single judge to preside over all patent challenges, claim construction issues, . . . [and]

will prevent inconsistent rulings and facilitate the consistent interpretation of the patents' claims.").; *In re Bear Creek Techs.*, 858 F. Supp. 2d at 1379 ("[C]entralization offers substantial savings in terms of judicial economy by having a single judge become acquainted with the complex patented technology and construing the patent in a consistent fashion (as opposed to having six judges separately decide such issues).").

Centralization is particularly appropriate when dealing with common patents or closely related patents, such as those here, involving identical specifications and/or involving the same technology, even if there are different accused products.  *In re Bear Creek Techs., Inc., ('722) Patent Litig.*, 858 F. Supp. 2d 1375, 1379 (J.P.M.L. 2012) ("The Panel has often centralized litigation involving different products which allegedly infringe a common patent or patents"); *Rembrandt*, 493 F. Supp. 2d at 1369 ("All actions can thus be expected to share factual questions concerning such matters as the technology underlying the patents, prior art, claim construction and/or issues of infringement involving the patents.").

In this case, many of RAH's infringement allegations in the Quad and Xerox cases involve the same EFI products.  For example, RAH's complaint against Xerox alleges that the following EFI products infringe the '870 patent:  "Xerox Accused Print Servers" include **EFI Fiery print servers** (including, but not limited to the EX Print Server for Xerox Color 560/570 Printers, Color 800/1000, 12 Color C75, Color J75, iGen4, iGen 150, and 700i/700 Color Digital Press, and the EX-P 1000i Print Server for Xerox Color 800i/1000i Presses) together with **Command Workstation** and/or **Color Profiler Suite** . . . ."  *RAH v. Xerox*, Case No. 6:18-cv-06746, Amended Complaint, ¶ 51.  So does RAH's complaint against Quad:  "[Quad] Accused Print Servers" include **EFI Fiery print servers** together with **Command Workstation** and **Color Profiler Suite** . . . ."  *RAH v. Quad*, Case No. 2:18-cv-00087, Amended Complaint, ¶ 46. RAH therefore has accused EFI's Fiery print servers, EFI's Command Workstation, and EFI's Color Profiler Suite of infringing the '870 patent.  RAH also has accused EFI's products of infringing the ''008 patent.  *See RAH v. Xerox*, Case No. 6:18-cv-06746, Amended Complaint, ¶ 89:  "In Xerox Accused Print Servers, Xerox provides EX Print Server preinstalled on a

computer system along with **Command WorkStation** (collectively, the "EX Computer"); *see RAH v. Quad*, Case No. 2:18-cv-00087, Amended Complaint, ¶ 115: "QG Accused Color Managed Systems" include . . . **EFI Fiery print servers** together with **Command Workstation** and **Color Profiler Suite** . . . ."  Many other examples exist throughout the Xerox and Quad complaints.

Further, as Quad states in its Motion, the alleged infringers in each of the other pending actions are actually Quad's suppliers.  (Mot. at 9.)  Thus, the accused products at issue will significantly overlap, and the cases will share factual questions concerning infringement of the Asserted Patents by these products.  *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) ("Moreover, since all the alleged infringers use the same product . . . , common factual questions are also present concerning the infringement issue.").

Moreover, RAH has accused Xerox, Quad, Adobe, and by implication, EFI, of infringing the '008 patent by virtue of using the same technology standardized by the International Color Consortium ("ICC").  *See, e.g., RAH v. Xerox*, Amended Complaint, ¶ 90:  "In Xerox Accused Print Servers, the EX Print Server comes preinstalled with color profiles for output devices, believed to comply with the **ICC v.4 specification**."; *RAH v. Quad*, Amended Complaint, ¶ 117: "Fiery Print Server includes **ICC v.4-compliant profiles** (including tonal transfer curves, AToB-type and BToA-type transforms) for specific color presses (e.g., Xerox C60), and generates and stores calibration curves for color presses (e.g., Xerox C60)."; *RAH v. Adobe*, Case No. 3:18-cv-03277, Complaint, ¶ 48:  "Adobe Accused Creative Products store color profiles that comply with the **International Color Consortium ("ICC")'s version 4 specification** ("ICC v.4")." The ICC specification appears to be central to RAH's infringement allegations against all defendants, and is yet another reason why centralization is appropriate for these cases.

Not only is the same ICC technology implicated, but that technology is closely tied to the Northern District of California.  Key third-party witnesses and documents are located in Northern California.  *See RAH v. Adobe*, Case No. 3:18-cv-03277, Adobe Motion to Transfer, Dkt. 22, pp. 4-5.  Each of the asserted patents concede that the ICC specifications are "prior art,"

and four out of eight ICC founding members who likely have key documents and witnesses pertaining to the ICC specification and its development are located in the Northern District.[2]  *Id.*

As RAH's complaints implicate a supplier (EFI or Adobe) along with its customers involving a common set of allegations, and concerning patents and technology in common, it only makes common sense that consolidation or centralization would promote efficiency.  *See In re PersonalWeb Techs.*, LLC, No. MDL No. 2834, 2018 U.S. Dist. LEXIS 101057, at *2-3.

### B.    The Northern District of California is Particularly Suited to be the Transferee Court

EFI, Adobe, Xerox, and Quad have all expressed interest in litigating in the Northern District of California.  (*See* Mot. at 8-9.)  Morevoer, two of the four actions (*EFI v. RAH*; *RAH v. Adobe*) are currently pending in the Northern District of California, before the same judge.

Centralizing the actions in the Northern District of California would ensure the convenience of the parties.  EFI is headquartered in the Northern District of California and relevant witnesses and documentary evidence is within that venue.  As EFI's Fiery line of products have been implicated in multiple lawsuits, the Northern District of California would be particularly well suited to facilitating discovery in the consolidated cases.  *See supra* Section IV.A.  *See, e.g., In re Equifax, Inc.*, MDL No. 2800, 2017 WL 6031680, at *2 (J.P.M.L. Dec. 6, 2017) (transferring actions to the district where the main defendant is headquartered as "relevant documents and witnesses thus likely will be found there."); *In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.*, MDL No. 2797, 2017 WL 4737285, at *1 (J.P.M.L. Oct. 19, 2017) ("[I]t is alleged that key entities and individuals with direct responsibility for the alleged conduct in this litigation are located in [the transferee] district and, therefore, relevant documents and witnesses may be located there.").

---

[2] Adobe, Apple Computer, Inc. ("Apple"), Silicon Graphics, Inc. ("SGI"), and Sun Microsystems, Inc. ("Sun") are or were headquartered in Northern California.  *Id.*  SGI and Sun were later acquired by Hewlett Packard Enterprise, headquartered in Northern California.  *Id.* Microsoft Corporation is headquartered in Redmond, Washington, within a fairly close distance to the Northern District of California.  *Id.*

Because Adobe is headquartered in the Northern District of California, the same reasons equally apply to RAH's claims against Adobe and its claims against Xerox and Quad based on Adobe's products.

And, any complaint by RAH that consolidation in the Northern District California would be inconvenient or inappropriate is belied by its own enforcement and licensing activities, including targeting California companies, traveling to California for in-person licensing meetings, and licensing the patents-at-issue to California-based companies. *See EFI v. RAH*, Case No. 3:18-cv-01612, Dkt. 27, pp. 2-5; *see also id.*, Dkt. 21 at 3 & n.2 (enforcement activities directed at California-based Hewlett Packard resulting in a license ); *Id.*, Dkt. 21-1, ¶ 10) (enforcement activities directed at two other unnamed California companies resulting in licenses); *Id.*, FAC, ¶¶ 20-35 (lawsuits against Ricoh, Quad, and Xerox, alleging infringement based on products from California-based EFI); *RAH v. Seiko Espon Corp., et al..*, Case No. 10-cv-06710, Dkt. 1 (N.Y.W.D. Dec. 21, 2010) (lawsuit against California-based U.S. Epson, Inc. and Epson America, Inc.); *Adobe*, Case No. 18-cv-733, Dkt. 1 (N.D. Ill. Jan. 31, 2018) (licensing and enforcement activities directed to California-based Adobe Systems, Inc.).  Further, RAH has admitted that "approximately 25%" of its licensing revenue comes from California-based companies. *EFI v. RAH*, Case No. 3:18-cv-01612, Dkt. 21-1, ¶ 10 & 23-3, ¶ 7.

In sum, RAH cannot credibly assert that the Northern District of California would be an inconvenient venue in which to litigate its infringement claims.[3]

---

[3] To the extent that RAH objects to Quad's MDL transfer motion on the basis that the Northern District of California lacks personal jurisdiction over it, that argument is meritless and not appropriate in the context of an MDL motion to transfer under Section 1407.  *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, 2018 U.S. Dist. LEXIS 170489, at *3-4 n.4 (J.P.M.L. Oct. 3, 2018) ("The Panel has long denied objections to transfer based on the transferee court's purported lack of personal jurisdiction."); *Id.*, *quoting In re: FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) ("Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue . . . [f]ollowing a transfer, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer.").

In addition to the fact that both EFI and Adobe are headquartered in the Northern District of California and RAH's claims against Xerox and Quad are based on EFI and Adobe products, the venue itself is considered easily accessible, well-equipped with resources, and includes judges with considerable expertise in managing MDLs. *See, e.g., In re Compression Labs, Inc. Patent Litig.*, 360 F.Supp.2d 1367, 1368-69 (J.P.M.L. 2005) ("In concluding that the Northern District of California is an appropriate forum for this docket, we note that the California district . . . is an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require."); *In re Viagra (Sildenafil Citrate) Products Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016) ("We are persuaded that the Northern District of California is an appropriate transferee district for this litigation. This district, which has the unanimous support of all responding plaintiffs and the defendant, provides a convenient and easily accessible location for this geographically dispersed litigation."); *In re Roundup Products Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) ("The Northern District of California is both convenient and easily accessible for all parties, and we are convinced that the district has the necessary judicial resources and expertise to efficiently manage this litigation.")

The Northern District of Illinois has recognized the suitability of the Northern District of California, as opposed to its own venue:

> No events of significance took place in this district. The patented products and methods appear to have been developed in locations other than this district. And the materials provided by Adobe reflect that the accused products were developed in the Northern District of California, the proposed transferee district. This is a relevant factor in the analysis. See [In re Acer Am. Corp., 626 F.3d 1252, 1256 (Fed. Cir. 2010)].
>
> ***
>
> As far as the relationship of the two communities to the dispute, the Court has already addressed this in discussing where the events material to the lawsuit occurred. In a nutshell, this district has no relationship to RAH's dispute with Adobe, whereas the Northern District of California has a significant relationship to the dispute. This favors transfer, as the Court has indicated.

*Id.*, pp. 3-4 & 8.

For these reasons, the Northern District of California is particularly well suited to centralize the cases involving the same or substantially similar infringement claims by RAH.

10

C.     **No Other District Referenced By RAH Is More Convenient than the Northern District of California**

RAH has thrice sought to bring suit in the Northern District of Illinois, once against each of Adobe, Quad, and Xerox.  In each case, the Northern District of Illinois transferred to a different district.  Three times courts have determined that a different venue is more convenient than RAH's chosen forum.  *Adobe*, Case No. 3:18-cv-03277, Dkt. 30; *Xerox*, Case No. 6:18-cv-06746, Dkt. 60; *Quad*, Case No. 1:17-cv-04931, Dkt. 70.  Thus, the Northern District of Illinois is not a convenient forum for centralization.

RAH has argued in the alternative that the Eastern District of Virginia, where RAH is ostensibly located, is an alternative convenient forum.  However, at least one court has indicated that RAH made no effort to establish that the Eastern District of Virginia satisfied 28 U.S.C. 1404(a), "i.e., that personal jurisdiction over Adobe and venue are appropriate there."  *Adobe*, Case No. 3:18-cv-03277, Dkt. 30, p. 9.  This is likely because the Eastern District of Virginia is not convenient for any of the parties.  Neither Adobe, Quad, Xerox, or EFI reside in Virginia, nor are any of the witnesses or documentation concerning the accused products located there.  Indeed, RAH has never filed suit in the Eastern District of Virginia in any of its eleven prior lawsuits.

The Eastern District of Wisconsin is also not convenient for all the parties.  While Quad appears to be headquartered there, it does not appear that the Eastern District of Wisconsin was even considered in the Adobe or Xerox motions to transfer as a possible forum.  This is likely because just like the Northern District of Illinois, neither Adobe nor Xerox had any ties to the Eastern District of Wisconsin except for purportedly making sales there.  Nor does RAH.  EFI also has no specific ties to that venue, as it is headquartered in Fremont, California, and the development of its accused products took place there.

For these same reasons, the Western District of New York is also not well suited to serve as a consolidated venue.

In sum, all of the parties, except RAH, have indicated a preference to litigate RAH's claims in the Northern District of California, whereas none of the venues proposed by RAH as an alternative to the Northern District of California would be convenient for all of the parties.

## V.    CONCLUSION

Based on the foregoing, EFI does not oppose transfer to the Northern District of California, centralization of the actions is appropriate under Section 1407, and the Northern District of California is the best venue to achieve efficiency for the judiciary, the parties, and counsel.

DATED:  October 22, 2018                    JEFFER MANGELS BUTLER & MITCHELL LLP

                                            By: */s/ Gregory S. Cordrey*
                                            GREGORY S. CORDREY
                                            Gcordrey@jmbm.com
                                            Jeffer Mangels Butler & Mitchell LLP
                                            3 Park Plaza, Suite 1100
                                            Irvine, CA 92614
                                            Telephone:  949-623-7200
                                            Facsimile:  949-623-7202

                                            Attorney for Plaintiff
                                            ELECTRONICS FOR IMAGING, INC.